NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                          :
**FLORENCE BELFIORE,**                    :
                                          :      Civil Action No. 12-4588 (MCA)
          *Plaintiff,*                    :
                                          :      OPINION
                                          :
v.                                        :      January 8, 2015
                                          :
**CAROLYN W. COLVIN,**                    :
**Acting Commissioner of Social Security,** :
                                          :
          *Defendant*.                    :
_____       :

**ARLEO**, Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Dɪsᴛʀɪᴄᴛ Jᴜᴅɢᴇ.

Before this Court is Plaintiff Florence Belfiore's request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). Plaintiff argues that (1) the Commissioner's decision was not supported by substantial evidence; and (2) the Commissioner committed legal error in denying Plaintiff's claim for Disability Benefits. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is beyond meaningful judicial review. Accordingly, the Commissioner's decision must be **REMANDED** for further consideration consistent with this Opinion.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

2

### B. The Five-Step Disability Test

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work

experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. See Podedworny, 745 F.2d at 221-22.

## II. DISCUSSION

### A. Procedural History

This case arises out of Plaintiff's November 19, 2007, applications for disability insurance benefits and supplemental security income, which were denied both initially on June 6, 2008, and on reconsideration on August 28, 2008. (Tr. 77-79, 139-46). Plaintiff then sought review before an administrative law judge, and a hearing before the Honorable Richard West (the "ALJ") occurred on March 19, 2010. (Tr. 40). Following the hearing, the ALJ issued a decision on June 24, 2010, in which he found that Plaintiff was not disabled because she was capable of performing past relevant work based on her current RFC. (See Tr. 18-25). Plaintiff then sought review before the Appeals Council, a request that was denied on June 6, 2012. (Tr. 1). Having exhausted her

4

administrative remedies, Plaintiff then timely filed the instant action on July 23, 2012. (Dkt. No. 1, Compl.).

### B. Factual Background

Plaintiff is a 58-year-old woman who alleged in her applications for Disability Benefits that she became disabled on June 15, 2006. (Tr. 139, 144). Prior to the onset of her alleged disability, Plaintiff appears to have worked as a factory worker in a number of different industries. (See Tr. 172). In all jobs, Plaintiff worked on the assembly line, performing tasks ranging from placing tickets on garments coming off the line to lifting heavy boxes. (See Tr. 173-77). In addition, all of the jobs listed in Plaintiff's work history required her to do some amount of reaching on a daily basis. (See id.).

Plaintiff claimed in her initial application that she suffers from tendinitis in her left shoulder, which prevents her from lifting her arm above a certain level. (Tr. 156). She lives with her daughter and grandson, and she spends her days caring for her grandson and tending to the family cat. (Tr. 164-65). Plaintiff alleges that her condition prevents her from performing any house or yard work tasks that require lifting, and she specifically states that she cannot lift more than five pounds at a time. (Tr. 166, 168). In addition, Plaintiff states that the pain in her arm adversely affects her ability to sleep and to perform simple tasks such as getting dressed, fixing her hair, and driving. (Tr. 165). Plaintiff further avers that sitting for extended periods of time causes her discomfort. (Tr. 168). As a result of her claimed inability to have full use of her left arm, Plaintiff also appears to suffer from depression and anxiety. (Tr. 170-71).

A January 31, 2007, report with respect to an MRI of Plaintiff's left shoulder revealed no obvious abnormalities in the arm. (See Tr. 230-32). But in a September 17, 2007, report from Dr. Daisy DeGuzman (Plaintiff's treating physician), Dr. DeGuzman stated on a prescription form that

Plaintiff was "considered disabled" due to "[severe] tendinitis of [the left] shoulder." (Tr. 234). In the attached medical records, Dr. DeGuzman did not provide any additional assessment of the limitations caused by Plaintiff's condition that led her to that conclusion. Rather, Dr. DeGuzman simply diagnosed Plaintiff with adhesive capsulitis of the shoulder and prescribed pain medication. (Tr. 235-38). Records from Plaintiff's occupational therapist do, however, indicate that Plaintiff was in significant pain due to her condition, although the pain seems to have improved over the first three months of therapy. (See Tr. 239-40). But after approximately two additional months of occupational therapy and an injection of Depomedrol, there was no further improvement in Plaintiff's condition. (Tr. 240).

In a May 22, 2008, consultative examination ordered by the Division of Disability Determination, Dr. Justin Fernando diagnosed Plaintiff with tendinitis of the left shoulder, but he found her prognosis to be good. (Tr. 290). Specifically, Dr. Fernando first noted that the diagnosis of adhesive capsulitis was not supported by the MRIs performed on Plaintiff's shoulder. (Tr. 288). Dr. Fernando did, however, observe limited range of motion in the left shoulder (Plaintiff could not lift the arm above 90 degrees), along with a difference in size in the left arm in comparison to the right due to an apparent "inflammatory reaction." (Tr. 289-90). Dr. Fernando further stated that Plaintiff "requires anti-inflammatories and injection of long-acting steroid at the site of the left deltoid tubercle. It would also be wise to immobilize the left arm in a sling." (Tr. 290-91).

In denying Plaintiff's claim in the first instance on June 6, 2008, the Commissioner considered the January 31, 2007, MRI report, Plaintiff's medical records submitted by Dr. DeGuzman, and the consultative examination performed by Dr. Fernando. (Tr. 80). In consideration of those records, the Commissioner acknowledged that Plaintiff did indeed suffer from tendinitis of the left shoulder; however, the Commissioner found that Plaintiff's condition

did not limit her ability to use her limbs. (Id.). Moreover, the Commissioner found that Plaintiff did not suffer from any other conditions which would place a significant limit on Plaintiff's ability to work. (Id.). That determination remained unchanged on reconsideration with a finding that Plaintiff was able to use her left arm "to assist in lifting, manipulating and grasping." (Tr. 86).

**C. The ALJ's Decision**

On October 22, 2008, Plaintiff requested a hearing before an ALJ, which occurred on March 19, 2010. (Tr. 40-72, 88). Following the hearing, the ALJ issued his decision on June 24, 2010, finding that Plaintiff was not disabled. (Tr. 18-25). In making that determination, the ALJ held that Plaintiff's disability claim failed at step four of the sequential analysis—that is, given Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing her past relevant work. (Tr. 23-24). In the alternative, the ALJ determined that even if Plaintiff were not capable of performing her past relevant work, jobs existed in significant numbers in the national economy that Plaintiff could perform in light of her age, education, work experience, and RFC. (Tr. 24). Thus, the ALJ held that a finding of no disability was warranted at both steps four and five of the sequential analysis.

Also at issue on this appeal, however, is the ALJ's finding at step three that neither Plaintiff's individual impairments nor a combination of her impairments met or medically equaled one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1 ("Appendix 1"). (Tr. 21). First, the Court notes that the ALJ found at step two that Plaintiff suffers from several severe impairments: (1) chronic degeneration and pain in her left shoulder; (2) degenerative disc disease in her back; and (3) spinal stenosis. (Tr. 20).[1]  In finding that Plaintiff's individual impairments

---

[1] Obviously, that list of impairments includes more than simply the shoulder tendinitis that the Commissioner considered at the initial and reconsideration levels of review. That discrepancy stems from the fact that Plaintiff was diagnosed with bulging discs in her back and spinal stenosis

or a combination thereof did not meet or medically equal a listed impairment, the ALJ considered disorders of the spine under Section 1.04 in Appendix 1. (Tr. 21). The ALJ rejected that possibility, since Plaintiff had lost neither her ability to walk effectively (as defined at 1.00B2b) nor her ability to perform fine and gross movements effectively (as defined at 1.00B2c). (Id.).

Having made that step-three determination, the ALJ moved on to the RFC analysis at step four. There, the ALJ found that claimant was capable of performing light work as defined at 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations: (1) Plaintiff could lift and carry only ten pounds frequently; and (2) Plaintiff could sit, stand, and walk for six hours in an eight hour workday, but could not perform any overhead reaching with her left arm. (Id.). In reaching that conclusion, the ALJ first noted Plaintiff's testimony regarding her subjective feelings of pain, as well as her course of treatment and her statements regarding her ability to perform certain tasks. (Tr. 21-22). The ALJ found, however, that Plaintiff's statements regarding the "intensity, persistence and limiting effects" of her impairments were not fully credible in light of the medical evidence in the record. (Tr. 22). In so finding, the ALJ gave Dr. DeGuzman's opinion no weight due to inconsistencies between her September 17, 2007, report and her September 25, 2008, report regarding the effect of Plaintiff's impairments on her ability to perform basic work-related activities. (Id.) As an additional factor in his decision to give Dr. DeGuzman's opinion no weight, the ALJ noted that Dr. DeGuzman's September 2007 opinion was signed by the office manager. (Id.). The ALJ failed to recognize, however, that Dr. DeGuzman signed a prescription sheet on which she declared Plaintiff disabled. (Tr. 234).

---

in the intervening time between the denial of her request for reconsideration and her hearing before the ALJ. (See Tr. 219-26). Those impairments will be discussed in greater detail in the Analysis section below.

8

The ALJ relied heavily upon the May 22, 2008, report of Dr. Fernando, giving that report "[g]reat weight" after finding Dr. Fernando's opinion to be "consistent with the overall evidence." (Id.). The ALJ then proceeded to cite to medical records generated subsequent to Dr. Fernando's opinion, which demonstrated that: (1) Plaintiff continued to experience pain and stiffness in the left shoulder, and a CT scan revealed a fluid-containing lesion in the left triceps; and (2) Plaintiff now suffered from herniated discs in her back and spinal stenosis. (Tr. 23). The ALJ concluded that although Plaintiff suffered some limitations as a result of these impairments, Plaintiff still retained the capacity to perform a number of basic work activities. (Id.). Thus, the ALJ held that Plaintiff retained the RFC to perform light work with the limitations specified above. (Id.).

Next, the ALJ considered whether Plaintiff was capable of performing her past relevant work in light of her RFC. In determining that Plaintiff was capable of performing her past relevant work as a ticketer, the ALJ relied upon the opinion of a vocational expert, who found that an individual with Plaintiff's RFC would be able to perform such a job. (Id.) Next, the ALJ determined that even if Plaintiff could not perform her past relevant work, there existed a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 23-24). Relying upon the testimony of the vocational expert in conjunction with the Dictionary of Occupational Titles, the ALJ concluded that a significant number of such jobs existed. (Tr. 24). Accordingly, the ALJ determined that Plaintiff was not disabled. (Tr. 24-25).

**D. Analysis**

   **1. The ALJ's Step Three Finding**

With respect to the ALJ's finding at step three that Plaintiff's impairments or combination of impairments did not meet a listed impairment, the Court finds that determination to be supported by substantial evidence. The ALJ stated that he specifically considered whether Plaintiff met

Listing 1.04 for spinal disorders, but rejected that listing because Plaintiff is capable of ambulating effectively and performing gross movements. (Tr. 21). Plaintiff's acknowledged spinal disorders of degenerative disc disease and spinal stenosis are both explicitly referenced in Listing 1.04, but there is no evidence in the record to suggest that Plaintiff has lost the ability to ambulate effectively or perform gross movements as those terms are defined at 1.00B2b and 1.00B2c. Indeed, both Plaintiff's own statements and the medical evidence demonstrate that Plaintiff is capable of walking effectively—although she experiences some discomfort—and performing fine and gross movements with her right arm. (See, e.g., Tr. 67, 167, 289). Finally, given Plaintiff's impairments, there are no other Musculoskeletal System listings that the ALJ should have considered. The Court is therefore satisfied that substantial evidence supports the ALJ's determination that Plaintiff failed to meet any of the Appendix 1 listings.

An entirely different matter, however, is whether there is substantial evidence to support the ALJ's finding that Plaintiff's combination of impairments does not medically equal a listed impairment. Because the ALJ has failed to adequately explain the reasoning for his determination, the Court finds that it is unable to conduct a meaningful judicial review of whether that determination is supported by substantial evidence in the record. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000).

In considering whether a claimant's combination of impairments medically equals an Appendix 1 listing, the Commissioner has directed ALJ's to receive and lend appropriate weight to expert opinion evidence on the issue. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). In general, this requirement is satisfied whenever the record contains a Disability Determination Transmittal Form or a Cessation or Continuance of Disability or Blindness form. Id. Sufficient expert opinion evidence may also take the form of "various other documents on which medical

and psychological consultants may record their findings." Id. In certain circumstances, however, the ALJ is required to receive into the record an updated expert opinion, as would be the case where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Id. at *3-4.

In this Court's opinion, there does exist such additional medical evidence in this case that may change the State medical expert's initial finding of non-equivalence, since the dated State medical expert reports do not incorporate later assessments of Plaintiff's condition. Indeed, Dr. Fernando's May 22, 2008, report deals only with Plaintiff's left shoulder impairment and makes no mention of her back impairments. (See Tr. 288-91). Moreover, the Disability Determination Transmittal Forms contained in the record—the latest of which is dated August 28, 2008—also reference only Plaintiff's shoulder impairment. (See Tr. 77-79). The record indicates, however, that Plaintiff received an MRI of her left shoulder on June 17, 2009, and an MRI of her spine on October 29, 2009. (Tr. 225-26). Dr. James Lee's report regarding the MRI of Plaintiff's left shoulder appears to provide additional information regarding the nature and severity of Plaintiff's left shoulder condition. (Tr. 226). In addition, the MRI of the spine yielded a diagnosis of spinal stenosis and degenerative disc disease, the two impairments that the ALJ found to be severe in addition to Plaintiff's left shoulder impairment. (Tr. 225).

While the Court is of the opinion that this additional medical evidence could reasonably be expected to have an impact on whether a medical expert for the State would consider Plaintiff's combination of impairments to be medically equivalent to a listed impairment, the relevant opinion here is that of the ALJ. The ALJ may ultimately determine that this additional medical evidence would not change the initial finding of non-equivalence, but the ALJ must explicitly state the

11

reasons for such an opinion. On remand, therefore, the ALJ is directed to determine whether in his opinion the additional medical evidence may change the State's earlier finding of non-equivalence with an Appendix 1 listing. If the ALJ determines that the additional medical evidence does not have such an effect, he must provide an adequate explanation for that opinion. If, on the other hand, the ALJ finds that the additional medical evidence may change the earlier finding of non-equivalence, the ALJ must incorporate an updated expert medical opinion into a renewed and complete analysis of whether Plaintiff's combination of impairments is equivalent to a listed impairment. See Burnett, 220 F.3d at 119-20.

**2. The ALJ's RFC Determination**

As noted previously, the ALJ determined that the Plaintiff was capable of performing light work as defined at 20 C.F.R. § 404.1567(b), with limitations on her ability to lift and carry any object over ten pounds and on her ability to reach overhead with her left arm. (See Tr. 21-23). Again, the Court finds that the ALJ's opinion on this issue fails to provide the Court with the ability to conduct a meaningful judicial review. See Burnett, 220 F.3d at 119.

First, the Court finds problematic the boilerplate language contained in the ALJ's opinion stating that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." (Tr. 22). Courts have scrutinized such language, since it implies that the ALJ improperly decided the claimant's RFC first and determined the credibility of the claimant's testimony second based on that RFC. See, e.g. Appello v. Comm'r of Soc. Sec., No. 12-6928, 2014 WL 268676, at *5 (D.N.J Jan. 23, 2014) (citing Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)). The presence of this language is not quite a fatal flaw prompting an automatic reversal (so long as the ALJ otherwise

adequately explains his reasoning), see Doherty v. Comm'r of Soc. Sec., No. 11-3701, 2012 WL 4507831, at *10 (D.N.J. Sept. 28, 2012), but its presence does give this Court pause.

Irrespective of the effect of the boilerplate language, however, the Court finds the ALJ's analysis to be inadequate. In determining a claimant's RFC, the ALJ is required to consider all relevant evidence. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Such relevant evidence includes not only medical evidence, but also "descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." Id. In considering all of the relevant evidence, the Commissioner unambiguously requires the ALJ to provide a "narrative discussion describing how evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). If the ALJ fails to provide a "clear and satisfactory explication of the basis on which [the RFC determination] rests," this Court is deprived of the ability to discharge its duty to determine whether the Commissioner's decision is supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

In this case, the ALJ fell far short of meeting this standard. The ALJ's analysis consists almost entirely of a recitation of the evidence in the record, without any accompanying explanation of how each piece of evidence factored into the ultimate RFC determination. (Tr. 21-23). Indeed, the only pieces of evidence for which the ALJ gives any semblance of an explanation of the role they played in his decision were the medical opinions of Drs. DeGuzman and Fernando. (See Tr. 22). But even those explanations are inadequate. With respect to Dr. DeGuzman's opinion, the ALJ determined that it was entitled to no weight because it was "not supported by the evidence," without either identifying the evidence that did not support Dr. DeGuzman's opinion or explaining away the evidence that did. (Id.). Moreover, the ALJ relied upon the obviously erroneous assertion

13

that "the opinion is signed by the doctor's office manager" in deciding to give Dr. DeGuzman's opinion no weight. (Id.). The office manager merely signed the cover page of the correspondence; the very next page of the transcript contains a prescription form with a handwritten and signed note by Dr. DeGuzman indicating that Plaintiff was disabled. (See Tr. 233-34). The only potentially justifiable basis for the ALJ's decision to entirely discredit Dr. DeGuzman's opinion lays in the inconsistencies between Dr. DeGuzman's September 2007 report declaring Plaintiff disabled and her September 2008 report declaring Plaintiff capable of performing a range of basic work activities. (Compare Tr. 233-41 with Tr. 280-82).[2] Even with those inconsistencies, however, the Court is not convinced that Dr. DeGuzman's opinion should have been entirely discredited. On remand, the Court will leave it to the ALJ to reconsider whether Dr. DeGuzman's opinion should be completely discredited in light of all of the evidence.

The ALJ similarly fails to adequately explain his decision to give "great weight" to Dr. Fernando's report. (Tr. 22). Indeed, the ALJ simply provides a blow-by-blow recitation of Dr. Fernando's findings, followed by the bare conclusion that Dr. Fernando's "opinion is consistent with the overall evidence." (Id.). Just as in his discussion of Dr. DeGuzman's opinion, the ALJ provides no explanation of the specific evidence in the record that supports his conclusion and does not explain why contrary evidence was rejected. Therefore, the Court finds the ALJ's analysis on this score to be woefully inadequate.

Most troubling, however, is the ALJ's bizarre recitation of the medical records developed subsequent to Dr. Fernando's report that indicate a significant worsening of Plaintiff's various medical conditions. (Tr. 23). The ALJ merely mentions these records without providing any

---

[2] The Court finds it curious that although the ALJ claims to have lent no weight to Dr. DeGuzman's opinion, the ALJ's RFC determination is almost identical to Dr. DeGuzman's September 2008 functional assessment. (See Tr. 281).

14

context or any indication of how they factored into his ultimate RFC determination. (Id.). The ALJ then concludes the section with what appears to be more boilerplate language in addition to the boilerplate language mentioned above. (Id.). Such a perfunctory and mechanical analysis—if it can even be called that—simply will not do. On remand, the ALJ is therefore directed to provide a full discussion of the medical records developed subsequent to Dr. Fernando's May 22, 2008, report and explain how, in light of those records, the continued assignment of great weight to Dr. Fernando's dated and incomplete report is justified.[3]

The ALJ is therefore directed to provide an adequate analysis of Plaintiff's RFC in accordance with both the Commissioner's rules and regulations and this Court's Opinion.[4] Because the ALJ's RFC determination is hereby vacated, the Court need not reach the ALJ's ultimate step four determination regarding Plaintiff's ability to perform past relevant work.

### III. CONCLUSION

Because the Court finds that the ALJ's decision beyond meaningful judicial review, the Commissioner's disability determination is **REMANDED** for further consideration consistent with this opinion. An appropriate order will follow.

s/ *Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[3] On a final note, the Court also acknowledges that the ALJ apparently failed to consider the letter written by Plaintiff's daughter, Nancy Sanchez, regarding Plaintiff's condition. This was also error and should be corrected on remand. See Fargnoli, 247 F.3d at 41.
[4] Of course, the ALJ need not perform the RFC analysis if he determines at step three that Plaintiff's combination of impairments equals a listed impairment.

15